## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: ) | MDL No. 3124 |
| ) | |
| AT&T INC. CELLULAR CUSTOMER ) | |
| DATA SECURITY BREACH ) | |
| LITIGATION ) | |

## INTERESTED PARTY PLAINTIFF CHRIS SCHULTE'S RESPONSE AND MEMORANDUM IN OPPOSITION TO MOTION FOR TRANSFER PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Chris Schulte ("Plaintiff Schulte"), Plaintiff in *Schulte v. AT&T. Inc. et al.,* Case No. 3:24cv7818 (D.N.J.), respectfully submits this response to the pending motion submitted by Plaintiff Lori Young Pursuant to 28 U.S.C. §1407 (MDL No. 3124, Dkt No. 1-1), requesting transfer and centralization of all actions alleging AT&T Inc. and its related entities involved in the data breach disclosed by AT&T Inc. ("AT&T") on July 12, 2024 (the "Related Data Breach Actions"). Plaintiff Schulte does not object to consolidation before the United States Judicial Panel on Multidistrict Litigation (the "Panel" or "JPML"), but supports transfer and consolidation in the District of New Jersey.

## I. INTRODUCTION

AT&T is currently one of the country's largest cellphone service carriers in the United States. AT&T collects vast troves of personally identifiable information ("PII") from its many millions of customers, profiting from that data through its own marketing efforts and by selling sensitive consumer information to third parties. On July 12, 2024, AT&T announced that it had once again suffered a massive data breach, exposing the highly sensitive personal information of millions of consumers. According to AT&T's announcement, the information exposed during the data breach included phone numbers and geolocating information. In a filing with the U.S. Securities and Exchange Commission, AT&T disclosed that the data was first accessed by the hacker on April 14, 2024, but the breach was not discovered until the cybercriminals themselves announced the crime they had successfully executed on April 19, 2024. The announcement has sparked the filing of a number of class action lawsuits, each with similar allegations, against the mobile technology giant.

As of the filing of the initial Motion to Transfer, there were at least fifteen total lawsuits filed in the following jurisdictions: the District of New Jersey, the Northern District of California, the Western District of Washington, the District of Montana, the Northern District of Georgia, and the Northern District of Texas. These putative class actions primarily allege violations of various state consumer

protection laws, breach of express and implied warranties, negligence, negligence *per se*, unjust enrichment, and invasion of privacy, among other claims.

## II. LEGAL STANDARD

The Panel may transfer and coordinate or consolidate actions pending in different federal district courts that raise common questions of fact pursuant to Section 1407 if transfer will facilitate "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Typically, four factors are considered in deciding whether to transfer a case under Section 1407: (1) the elimination of duplication in discovery; (2) the avoidance of conflicting rules and schedules; (3) the reduction of litigation cost; and (4) the conservation of the time and effort of the parties, attorneys, witnesses, and courts.

## III. ARGUMENT

### A. Transfer and Consolidation under Section 1407 is Appropriate and Necessary in this Litigation

This litigation is appropriate for transfer pursuant to 28 U.S.C. § 1407(a) because the actions raise common questions of fact and consolidation will eliminate duplicative discovery, avoid the risk of inconsistent rulings, and reduce litigation costs and efforts.

1. **The Actions Raise Common Questions of Fact**

To determine whether consolidation under Section 1407 is appropriate, the Panel looks to the pleadings to determine whether common questions of fact are present. Here, each of the complaints is based on allegations that AT&T failed to use reasonable security procedures and practices to secure the highly sensitive personal information of its millions of customers, in violation of various statutes and state common law. This Panel previously consolidated cases related to a 2021 T-Mobile data breach, holding that they presented common factual questions concerning the alleged breach. The Panel determined that the common factual questions included: (1) T-Mobiles data security practices and whether those practices met industry standards; (2) how the malfeasants obtained access to T-Mobile's system; (3) the extent of the personal information affected by the breach; (4) when T-Mobile knew or should have known of the breach; and (5) T-Mobile investigation into the breach. *In re: T-Mobile Customer Data Security Breach Litigation*, 576 F. Supp. 3d 1373, 1375 (J.P.M.L. 2021). This litigation presents at least those same factual questions.

This Panel has consolidated other large-scale data breach cases due to the inherent common questions of fact. *See, e.g.*, *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 544 F. Supp. 3d 1371, 1372 (J.P.M.L. 2021); *In re Blackbaud, Inc., Customer Data Sec. Breach Litig.*, 509 F. Supp. 3d 1362, 1363

(J.P.M.L. 2020); *In re Am. Med. Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350, 1354 (J.P.M.L. 2019); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019); *In re: Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322, 1324–25 (J.P.M.L. 2017).

### 2. Transfer and Consolidation Will Prevent Duplicative Discovery

Transfer and consolidation under Section 1407 "ensure[s] that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980).

Absent transfer and consolidation, the various courts and the parties will face significant duplicative discovery. All plaintiffs are very likely to propound the same interrogatories and requests for admission, seek the same documentation, and seek to depose the same witnesses. AT&T is very likely to raise the same objections to discovery and assert the same privileges to discovery in each of these cases. Consolidation will permit the parties to coordinate their efforts in a single proceeding, promoting efficiency and preserving party and judicial resources.

5

### 3. The Parties Face Inconsistent Pretrial Proceedings Absent Transfer and Consolidation

As the Panel has previously noted, centralization in data breach cases "prevent[s] inconsistent pretrial rulings, including with respect to class certification." *In re: T-Mobile Customer Data Security Breach Litigation*, 576 F. Supp. 3d at 1375. Absent transfer and consolidation, there is a significant possibility that different courts will issue inconsistent rulings during pretrial proceedings, including on issues related to class certification. For this reason, consolidation is in the best interests of all parties to the litigation and the courts.

### 4. The Number of Current Actions and The Likelihood of Additional Tag-Along Actions Supports Centralization

There are at least fifteen class action cases pending against AT&T related to the 2024 data breach. And, given the millions of individuals affected by the data breach and the publicity surrounding it, it is very likely that many more will follow. *See, e.g.*, *In re 21st Century Oncology Customer Data Security Breach Litigation*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("With more than two million patients affected by the data breach, additional tag-along actions also may be forthcoming.").

The Panel has routinely ordered centralization even where three or fewer cases were pending. *See, e.g.*, *In re Wireless Tel. Replacement Prot. Programs Litig.*, 180 F. Supp. 2d 1381, 1382 (J.P.M.L. 2002) (consolidating three consumer

protection cases and determining that pending motions can be presented to and decided by the transferee judge); *In re Phila. Life Ins. Co. Sales Pracs. Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978). Given the number of current actions and likelihood that additional tag-along actions will be filed, transfer and consolidation is appropriate.

### B. This Panel Should Transfer the Related Actions to the District of New Jersey

In selecting the transferee court, the Panel considers several factors, including "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." *Manual for Complex Litigation, Fourth* § 20.131 (2004). The District of New Jersey is the appropriate transferee forum here.

Currently, there are at least fifteen related actions pending in a variety of districts across the United States. None of the Actions have progressed past the initial filing of the complaint. Accordingly, the location where cases have progressed furthest is a neutral factor in the instant case.

The other factors weigh in favor of transfer to the District of New Jersey. AT&T's corporate headquarters were previously located in Bedminster, New

7

Jersey for decades and they maintain a significant presence in New Jersey up to the present. New Jersey is a "major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services." *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 196 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2002); *see also In re Jamster Mktg. Litig.*, 427 F. Supp. 2d 1366, 1368 (J.P.M.L. 2006) (choosing a transferee forum in an "accessible metropolitan location"). Newark, New Jersey is an easily accessible forum, as it is served by the Newark Liberty International Airport, which is less than four miles from the proposed transferee courthouse, as well as several additional airports in and around the Greater New York City area. Because plaintiffs, counsel, class members, experts, and witnesses are likely to be located across the country, this accessible transportation will serve to minimize cost and inconvenience to all parties.

Finally, the judges of the District of New Jersey have the experience, skill, and caseload appropriate to oversee the instant action. The District has two other similar data security breach MDLs pending and regularly handles complex civil litigation like this MDL. *See, e.g.*, *In re: Samsung Customer Data Security Breach Litigation*, Case No. 1:23-MD-3055 (MDL-3055); *American Medical Collection Agency, Inc., Customer Data Security Breach Litigation*, Case No. 2:19-MD-2904

(MDL-2904). Therefore, the District has a proven ability to manage MDLs in an efficient and expeditious manner.

**IV. Conclusion**

For the reasons set forth above, Plaintiff Schulte respectfully requests that all actions be transferred and consolidated in the District of New Jersey.

Respectfully submitted, this 19th day of August 2024.

_____
John C. Herman
Candace N. Smith
Kirk Zhao
**HERMAN JONES LLP**
3424 Peachtree Road N.E.,
Suite 1650
Atlanta, Georgia 30326
Telephone: (404) 504-6500
Facsimile: (404) 504-6501
jherman@hermanjones.com

*Counsel for Plaintiff Chris Schulte*